

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/18/2009

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-35354 |
| JOHN KENNETH CLINGMAN; fdba C J | § | Chapter 13 |
| STUDIOS, SUSAN YVONNE CLINGMAN, | § | |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION OVERRULING THE TRUSTEE'S OBJECTION TO DEBTORS' MONTHLY EXPENSE FOR THE CARE AND SUPPORT OF ELDERLY PARENTS

### Background

On February 11, 2009, the Court held a confirmation hearing on the Clingmans' proposed chapter 13 plan. After an evidentiary hearing, the Court overruled the objections made by the chapter 13 Trustee and confirmed the plan. The fundamental issue at the hearing was whether the Clingmans should be allowed to budget $613.44 per month for the care and support of Mrs. Clingman's elderly parents. Because the Court determined that the budgeted expense is authorized by 11 U.S.C. § 1325(b)(3), the Trustee's objection was overruled.

This memorandum memorializes the Court's reasoning in making its determination.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. § 1408.

### 11 U.S.C. § 707(b)(2)(A)(ii)(II)

Confirmation of chapter 13 plans is governed by 11 U.S.C. § 1325. If the chapter 13 trustee objects, the Court may not approve a plan unless "the plan provides that all of the debtor's projected disposable income . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined as current

monthly income less reasonably necessary expenses. 11 U.S.C. § 1325(b)(2). For a debtor with an income above the state median income, reasonably necessary expenses are generally determined by subparagraphs (A) and (B) of 11 U.S.C. § 707(b)(2). 11 U.S.C. § 1325(b)(3); *In re Gonzalez*, 388 B.R. 292, 310 (Bankr. S.D. Tex. 2008).

> Under subparagraph (II) of § 707(b)(2)(A)(ii):
>
> [T]he debtor's monthly expenses may include . . . the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly . . . member of the debtor's immediate family (including parents . . . of the debtor . . . ) and who is unable to pay for such reasonable and necessary expenses.

11 U.S.C. § 707(b)(2)(A)(ii)(II); *In re Hicks*, 370 B.R. 919, 922 (Bankr. E.D. Mo. 2007).

The Trustee challenges two of the Clingmans' proposed monthly budget items. These items total $613.44 and are for the payment of the mortgage and taxes on a home in Wyoming in which Mrs. Clingman's parents have resided for over 40 years. The home was transferred to the Clingmans by Mrs. Clingman's parents in order to secure a home equity loan to pay for necessary repairs for the Wyoming home. The loan was used to replace windows, fix the roofing, and paint the more than 100-year old home. None of the loan proceeds were used for personal purposes. The Wyoming home is now part of the Clingmans' chapter 13 bankruptcy estate.

Mrs. Clingman's father is in his early 80s and her mother is in her early 70s. Both parents have no source of income other than social security. After necessary expenses for food and utilities, Mrs. Clingman's parents have less than $100 per month on which to live. As a result, the Clingmans have paid the mortgage and tax payments on the Wyoming home to allow Mrs. Clingman's parents to continue living there. They began providing this support to Mrs. Clingman's parents long before this bankruptcy case was filed.

At first glance, the Clingmans' monthly expense of $613.44 seems to be for the maintenance of a second home.  However, the Trustee introduced no evidence at the hearing that contradicts the following factual conclusions, each of which is reached by the Court based on Mrs. Clingman's testimony:

- The Clingmans' monthly expense of $613.44 subsidizes the care and support of Mrs. Clingman's elderly parents.

- Without the subsidy, Mrs. Clingman's parents would be unable to provide for their own lodging because:
    - Mrs. Clingman's parents have insufficient funds to pay $613.44 per month.
    - $613.44 per month is less than the amount Mrs. Clingman's parents would be required to pay to rent an alternative residence in Wyoming.
    - No other family member can contribute financial support to Mrs. Clingman's parents.

- The subsidy was not commenced in contemplation of the bankruptcy case.

Based on the financial situation of Mrs. Clingmans' parents, the Clingmans' monthly expense of $613.44 is a continuation of an actual expense that is reasonable and necessary for the care and support of Mrs. Clingman's elderly parents under § 707(b)(2)(A)(ii)(II) and is allowable under § 1325(b)(3).

Implicit in the Trustee's objection is a bad faith argument.  The Court finds that the Clingmans' monthly expense for the benefit of Mrs. Clingman's parents is not to circumvent their bankruptcy obligations.  Instead, as explained above, the expense is taken in good faith.

The Court notes *In re Glenn*, a case with similar facts.  *In re Glenn*, 345 B.R. 831 (Bankr. N.D. Ohio 2006).  In *Glenn*, the debtors were not allowed to "allocate as a 'reasonably necessary expense' the monthly payment they make on the mortgage obligation encumbering the residence of Mr. Glenn's mother, but which against the [d]ebtors is an unsecured debt.'" *Id.* at 836.  Mr.

Glenn's mother was a cosignor on the loan who was unable to fully assume the debt. *Id.* at 834, 837. Without the debtors' mortgage payments, her house would be put into "jeopardy." *Id.* at 837. The court reasoned that "[i]t is a basic facet of bankruptcy law that similarly situated creditors are entitled to be treated equally" such that the debtors could not "devot[e] a significant amount of their income, $1,146.06 per month, to the payment of just one unsecured debt which would otherwise be discharged in conjunction with those other similarly situated unsecured obligations . . ." *Id.* at 836-37.

This Court reaches a different conclusion than in *Glenn*. In *Glenn*, the court denied the debtors' mortgage payment even though the house of Mr. Glenn's mother would be put into jeopardy. However, it appears that the § 707(b)(2)(A)(ii)(II) issue was not presented to the *Glenn* court as it was in this case. *See In re Glenn*, 345 B.R. 831 (Bankr. N.D. Ohio 2006).

Nevertheless, it is important to note that whether an expense is allowable is a separate and independent determination from the consideration of any potential collateral effects on the debtor or a particular creditor. Allowance of an expense should be guided by §§ 1325(b)(3) and 707(b)(2), the provisions of the Bankruptcy Code governing allowable reasonably necessary expenses. Once an expense is deemed allowable under these provisions, the fact that the payment might result in a benefit to the debtor or to a particular creditor should not preclude the expenditure.

In this case, the Trustee objects because any appreciation in the value of the Wyoming home would inure to the Clingmans' benefit. That is a true statement, but it does not constitute a valid objection to confirmation. Indeed, if there is a collateral benefit to the Clingmans, it would support their fresh start after the bankruptcy case is concluded. Recently, the Supreme Court confirmed that a fundamental purpose of the Bankruptcy Code is to grant "the honest but

unfortunate debtor a fresh start." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 127 S. Ct. 1105, 1106, 166 L. Ed. 2d 956 (2007). The Court will not decline to confirm a plan because the Clingmans are paying a statutorily-authorized expense that coincidentally improves their chance at a fresh start.

Accordingly, the Trustee's objection to the Clingmans' monthly expense of $613.44 is overruled. By separate order, the plan is confirmed.

SIGNED February 17, 2009.

                                              Marvin Isgur
                            UNITED STATES BANKRUPTCY JUDGE